In re Matthew T. HINTERLONG,
Relator.

No. 2–02–016–CV.

Court of Appeals of Texas,
Fort Worth.

July 3, 2003.

Gardere Wynne Sewell, L.L.P., Michael A. Barragan, Dallas, for Relator.

Thompson, Coe, Cousins & Irons, L.L.P., John L. Ross, Sherry L. Travers, Dallas, for Real Parties In Interest.

Panel A: HOLMAN and WALKER, JJ.; and DAVID L. RICHARDS, J. (Sitting by Assignment).

## OPINION ON REHEARING

SUE WALKER, Justice.

We deny the motions for rehearing filed by relator and real parties in interest, withdraw our prior opinion and judgment and substitute the following opinion.

## I. INTRODUCTION

Relator Matthew T. Hinterlong seeks mandamus relief from a trial court order denying his motion to compel discovery of the identity of, and other information relating to, a student who provided a crime stoppers tip to Arlington Martin High School (AMHS). The tip resulted in Hinterlong's expulsion and placement in alternative school. In two issues, Hinterlong contends that the trial court abused its discretion in ruling the information privileged and not subject to discovery because: (1) AMHS's crime stoppers program does not qualify as a crime stoppers organization under section 414.001(2) of the Texas Government Code; (2) even assuming AMHS's program qualifies as a crime stoppers organization, the communication allegedly made by the student was not a crime stoppers tip; and (3) the crime stoppers privilege set forth in section 414.008 of the Texas Government Code is unconstitutional as applied in this case because it violates the open courts provision of the Texas Constitution. Because we hold that the crime stoppers privilege is unconstitutional as applied in this case, we condition-

ally grant Hinterlong's petition for writ of mandamus.

## II. BACKGROUND FACTS

In October 1999, Hinterlong was a senior at AMHS, an honors student, and captain of the varsity tennis team. On October 25, 1999, during lunch, a student informant provided information to an AMHS teacher, Rynthia Clements, that Hinterlong had "either drugs or alcohol in the trunk of his vehicle" on school property. The student indicated Hinterlong was storing alcohol for other students for the upcoming, out-of-town regional tennis tournament and that, therefore, the matter needed quick attention. Clements did not recall the student informant telling her how he or she learned this information. Clements had no personal knowledge of Hinterlong being associated with either drugs or alcohol.

Although AMHS had a crime stoppers committee and particular procedures existed for making a crime stoppers tip, Clements was not a person designated to receive tips and did not serve on or sponsor the crime stoppers committee. She had personally never been involved in any other crime stoppers tip. Upon receiving the tip regarding Hinterlong, Clements handwrote a note to an assistant principal, Mr. Henson, advising him of the tip. Clements did not sign her name to the note, but instead obtained permission from another teacher, Meredith Hightower, to sign Hightower's name to the note. Clements said she did this to protect the student tipster's identity and to ensure that the matter would be given immediate attention. She said that she had never before used another teacher's name to report alleged student misconduct.

Hightower explained that she allowed Clements to use her name on the note because Clements said it was an emergency, Clements felt the tip would be acted upon immediately if Hightower's name was on it, and Clements believed it necessary to sign Hightower's name to protect the identity of the student informant. Hightower knew of no other instance at AMHS where a teacher had used another teacher's name to report student misconduct. Although Hightower had never been approached by a student with a crime stoppers tip, she said students were told during AMHS's daily announcements simply to report crime stoppers tips to someone in authority. Teachers were instructed to forward such tips to someone who could respond to the tip.

Dr. Terri Lindsey, an assistant principal and the AMHS crime stoppers committee sponsor, testified that students could make crime stoppers tips to any teacher. Typically, however, the teacher would then make a written crime stoppers tip to either Lindsey or to the crime stoppers committee. Clements's note did not go to Lindsey or to the crime stoppers committee. Instead, it was forwarded to vice principal Sherion Clark.

Clark received the note purportedly signed by Hightower and, because she knew Hinterlong had tennis during his last class period, she went to the tennis courts to find Hinterlong. She informed Hinterlong of the tip and explained that she was required to follow up. Hinterlong stated, "Sure, no problem," and handed her his keys.

Clark searched the back portion of Hinterlong's Blazer, which contained an "abundance of things," such as large speakers, an athletic bag, a tennis racket bag, clothing items, and an eight-to-twelve ounce Ozarka water bottle. In fact, the back of Hinterlong's Blazer was so full that Hinterlong stood by Clark as she rummaged through the items and "as things were falling down, you might say, out of the back ... he reached up and kind of kept them from falling out on me or on the ground."

The Ozarka water bottle caught Clark's attention because the liquid remaining in the bottle was brownish, the color of cola. There was very little liquid in the bottle, just enough to cover the bottom of the bottle—a "thimble full." Clark opened the bottle and smelled alcohol. Hinterlong's tennis coach arrived, smelled the liquid, and also stated that it smelled like alcohol. Clark completed her search of Hinterlong's Blazer, but discovered no additional alcohol or drugs.[1]

Clark escorted Hinterlong to her office. On the way there, she and Hinterlong had a general conversation. While she does not remember Hinterlong using the phrase "set up," she remembered Hinterlong saying that the incident "may involve something else." When they arrived at her office, Clark called Hinterlong's parents and the school's resource officer. The resource officer issued Hinterlong a citation for minor in possession of alcohol.

Two days later, on October 27, Clark conducted a Level I informal conference

---

1. Fireworks were also found in a bag in Hinterlong's vehicle, and Hinterlong received a citation for their possession. The record indicates, however, that Hinterlong's expulsion and placement in an alternative school resulted from his possession of alcohol, not fireworks. Hinterlong was required to complete "intervention counseling" regarding alcohol prior to readmission to AMHS. Additionally, Hinterlong's expulsion from AMHS was upheld through the administrative appeals process "because Matt did have possession of alcohol on school property."

with Hinterlong and his parents.[2] Hinterlong denied that the Ozarka water bottle was his. He said that he was surprised that the bottle was found in his Blazer because he never drinks Ozarka water and does not know anyone who does. Hinterlong and his parents expressed their belief that Hinterlong had been set up by other students.

Hinterlong's parents explained that in July 1999 they took Hinterlong on a trip out of state to visit several colleges. A friend of Hinterlong's who had a key to the Hinterlongs' home allowed several other students to trespass and party at the home. When the Hinterlongs returned from their trip, they immediately filed a report with the Dalworthington Gardens Police Department. A memo provided by the Hinterlongs to the police a few days after their return indicates that the trespassing students ordered a pornographic movie, caused approximately $300 damage to the swimming pool, and stole keys to two vehicles, later identified as Hinterlong's Blazer and Hinterlong's brother's car. As a result of the incident, thirteen AMHS students were ticketed or reprimanded by the police. The case remained open at the time the tip was reported against Hinterlong because one of the students was contesting the charges.

At the conference, the Hinterlongs provided Clark with a copy of the July 1999 police report. They explained that the AMHS students ticketed for trespassing at their house had reason to be vindictive towards them. They indicated that the tip came at a suspicious time: at a crucial point in Hinterlong's extracurricular activities and three days before the regional

tennis tournament set for October 28. Additionally, Mr. Hinterlong stated that his son had not driven the Blazer all weekend. He said that he personally saw the back of the Blazer and did not see the Ozarka water bottle.

However, based on the Ozarka water bottle found in Hinterlong's vehicle and the presumption that the thimble full of liquid it contained was alcohol, Clark disciplined Hinterlong in accordance with the school's "zero tolerance" policy. At the conclusion of the informal conference, Clark recommended Hinterlong's removal from AMHS and placement in an alternative school for the remainder of the semester. Clark's typed report of the informal conference concludes:

> With evidence found in the vehicle, my decision is based on the following board policy, AISD Student Code of Conduct, and the MHS Student Handbook:
>
>> A student shall be removed from class and placed in an alternative education program if the student commits the following on or within 300 feet of school property, as measured from any point on the school's real property boundary line, or while attending a school sponsored or school related activity: ... possesses ... an alcoholic beverage.

Clark said Hinterlong's possession of the Ozarka water bottle in his Blazer mandated his expulsion under this policy. Clark's discipline of Hinterlong also included the requirement that he complete intervention counseling prior to returning to AMHS.

On October 28, a Level II appeal conference was held with the building principal, Mr. Jacoby. At that conference, Jacoby

---

2. No tape recording or transcription of the informal conference exists. Clark attempted to record the informal conference, but the tape malfunctioned. She informed the Hinterlongs of this and offered to re-conduct the conference, but they indicated that would not be necessary. Clark's deposition and her typed report of the conference, however, reflect the facts recited above.

noted that Hinterlong's parents presented "compelling" information regarding a possible "set up." However, Jacoby upheld Hinterlong's expulsion from AMHS and placement in alternative school, citing "concerns about the operation of the crime stoppers program, the fact the windows on the Blazer are dark, and the parent having driven the car over the weekend." For these reasons, Jacoby "made the decision to support the Level I decision made by Mrs. Clark because Matt did have possession of alcohol on school property."

Following the appeal conference, Hinterlong's parents provided to AMHS a list of names of the students who were ticketed or reprimanded in connection with the July trespassing incident at their home. The Hinterlongs indicated that more students could be involved; however, because the case was still open, police refused to verify the list of names. Several months later, the list was shown to Clements, and she denied that the student informant's name was on the list. No crime stoppers reward money was ever requested or paid to the student informant regarding the Hinterlong tip.

Hinterlong was prosecuted in municipal court. A jury acquitted him of the minor in possession of alcohol charge because the prosecution failed to produce the expert who tested the contents of the Ozarka water bottle. Following his acquittal, Hinterlong filed suit against Arlington ISD, Rynthia Clements, and John Doe or Jane Roe Number 1 and John Doe or Jane Roe Number 2 (the student informant and the person or persons who planted the Ozarka water bottle in his vehicle) for malicious prosecution, defamation, and negligence.

Hinterlong sought to discover the identity of, and other information relating to, the student informant. Real parties in interest,[3] asserting the statutory crime stoppers privilege, refused to answer requests for disclosure and interrogatories seeking the name, address, and telephone number of the student tipster. Real parties in interest also refused to produce documents "that would disclose or suggest the identity of" the informant. Clements likewise refused in her deposition to disclose the identity of the student tipster.

Finally, Hinterlong filed a motion to compel discovery of this information and the relevant documents. Hinterlong's motion to compel discovery raised in the trial court the same issues he raises in this original proceeding: that the crime stoppers privilege does not apply because AMHS's crime stoppers program is not a crime stoppers organization; that the "tip" was not a true crime stoppers tip; and that the statutory crime stoppers privilege as applied to him unconstitutionally violates the Texas Constitution's open courts provision. Following an evidentiary hearing, the trial court found that AMHS's crime stoppers program is a valid crime stoppers organization, that the AMHS's crime stoppers organization falls within the statutory definition of a crime stoppers organization, and that the tip made regarding Hinterlong was a privileged crime stoppers communication. The trial court did not make an express ruling on Hinterlong's as-applied challenge to the constitutionality of the crime stoppers privilege under the Texas Constitution's open courts provision.[4] The trial court denied Hinterlong's motion to compel discovery, ruling

---

3. Arlington ISD and Clements are the real parties in interest in this original proceeding.

4. Hinterlong expressly raised his as-applied constitutional challenge in his motion to compel and at the hearing on his motion to com-

pel. Thus, by denying Hinterlong's motion, the trial court implicitly overruled the constitutional challenge. *See* TEX.R.APP. P. 33.1(a)(2)(A).

that the student's identity was privileged, and therefore exempt from discovery, under the crime stoppers statute. It is from this order that Hinterlong seeks mandamus relief.

### III. DUE DILIGENCE

■ We first address real parties in interest's contention that Hinterlong did not exercise due diligence in seeking mandamus relief. Real parties in interest urge us to deny Hinterlong's petition for writ of mandamus on the ground that he has provided no explanation for his lack of diligence in waiting four and one-half months to file his petition for writ of mandamus. Hinterlong, however, claims that he has provided a reasonable explanation for the delay and that, in any event, real parties in interest have shown no harm resulting to them from the delay.

■ Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles. *In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 337 (Tex.1999) (orig.proceeding); *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993) (orig.proceeding); *Bailey v. Baker*, 696 S.W.2d 255, 256 (Tex.App.-Houston [14th Dist.] 1985, orig. proceeding). One such principle is that "[e]quity aids the diligent and not those who slumber on their rights." *Rivercenter Assocs.*, 858 S.W.2d at 367 (quoting *Callahan v. Giles*, 137 Tex. 571, 155 S.W.2d 793, 795 (1941) (orig.proceeding)). Thus, it is well-settled that mandamus relief may be denied where a party inexplicably delays asserting its rights. *See, e.g., Rivercenter Assocs.*, 858 S.W.2d at 367; *Bailey*, 696 S.W.2d at 256.

■ In determining if a relator's delay in seeking a writ of mandamus is a barrier to the issuance of the writ, a court may analogize to the doctrine of laches, which bars equitable relief. *Sanchez v. Hester*, 911 S.W.2d 173, 177 (Tex.App.-Corpus Christi 1995, orig. proceeding). A party asserting the defense of laches must show both an unreasonable delay by the other party in asserting its rights and harm resulting to it because of the delay. *In re Bahn*, 13 S.W.3d 865, 871 (Tex.App.-Fort Worth 2000, orig. proceeding); *Sanchez*, 911 S.W.2d at 177 (citing *Rogers v. Ricane Enters.*, 772 S.W.2d 76, 80 (Tex. 1989)).

Here, counsel for Hinterlong filed an affidavit providing a reasonable explanation for the delay. Counsel's affidavit explains that at the conclusion of the August 16, 2001 hearing on Hinterlong's motion to compel, he asked the official court reporter, who was present, to prepare the record from the hearing. He paid for the reporter's record, but did not receive it until late October 2001.

By that time, real parties in interest had filed their own motion to compel discovery seeking information from Hinterlong that he contended was attorney-work-product privileged. A hearing on this motion was set for November 8, 2001. Hinterlong's counsel explained that he wanted a ruling on that motion before he filed the petition for writ of mandamus so he could include this discovery issue in his petition, if necessary.

Additionally, lead counsel for Arlington ISD and Clements requested a brief moratorium on activity in the case because her father passed away. Hinterlong's counsel agreed to accommodate her and waited a few extra weeks to file the petition for writ of mandamus. Hinterlong's counsel now asserts that Arlington ISD and Clements cannot use the delay they requested against him. The trial court denied real parties in interest's motion to compel by order dated December 20, 2001. Hinter-

long filed his petition for writ of mandamus with this court on January 14, 2002.

Under these facts, we conclude that Hinterlong has provided a reasonable explanation for his delay in seeking mandamus relief. *See, e.g., In re Bahn,* 13 S.W.3d at 871 (recognizing relator provided reasonable explanation for three-month delay in filing petition for writ of mandamus). Further, real parties in interest have failed to show how they have been harmed by the delay. *Id.* In fact, real parties in interest requested a delay in the case and also did not oppose Hinterlong's motion for temporary stay of the underlying case pending the outcome of this mandamus proceeding. Accordingly, we hold that Hinterlong is not barred from seeking mandamus relief.

## IV. AVAILABILITY OF MANDAMUS RELIEF

■ Mandamus is an extraordinary remedy and will issue only if the trial court has committed a clear abuse of discretion and the relator has no adequate remedy at law. *Tilton v. Marshall,* 925 S.W.2d 672, 682 (Tex.1996) (orig.proceeding); *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker,* 827 S.W.2d at 839 (quoting *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding)). A trial court has no discretion in determining what the law is or applying the law to the facts. Thus, a clear failure to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ. *Walker,* 827 S.W.2d at 840.

■ Remedy by appeal in a discovery mandamus is not adequate where a party is required "to try his lawsuit, debilitated by the denial of proper discovery, only to have that lawsuit rendered a certain nullity on appeal." *Id.* at 841 (quoting *Jampole v. Touchy,* 673 S.W.2d 569, 576 (Tex.1984) (orig.proceeding)). Remedy by appeal is likewise not adequate where the trial court's discovery order disallows discovery that cannot be made a part of the appellate record, thereby denying the reviewing court the ability to evaluate the effect of the trial court's error. *In re Colonial Pipeline Co.,* 968 S.W.2d 938, 941 (Tex.1998) (orig.proceeding); *Walker,* 827 S.W.2d at 843–44. Remedy by appeal may also be inadequate when it is insufficient to protect a specific constitutional right asserted by relator. *See Tilton,* 925 S.W.2d at 682.

## V. CRIME STOPPERS PRIVILEGE

■ Generally, privileged matters are not discoverable. *In re Anderson,* 973 S.W.2d 410, 411 (Tex.App.-Eastland 1998, orig. proceeding). The party claiming a privilege has the burden to establish that privilege. *Jordan v. Court of Appeals,* 701 S.W.2d 644, 648–49 (Tex.1985) (orig.proceeding). Thus, in considering whether an abuse of discretion occurred, we must determine if Arlington ISD, as the party asserting the privilege, discharged its burden of proof as a matter of law. *See In re WHMC,* 996 S.W.2d 409, 411 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding).

### A. Crime Stoppers Organization

■ In his first issue, Hinterlong challenges the trial court's finding that the student informant's identity is privileged. Hinterlong first contends that no privilege exists because the AMHS crime stoppers program is not a "crime stoppers organization" as defined by the crime stoppers statute.

Chapter 414 of the Texas Government Code defines a "crime stoppers organization" as:

(A) a private, nonprofit organization that is operated on a local or statewide level, that accepts and expends donations for rewards to persons who report to the organization information about criminal activity and that forwards the information to the appropriate law enforcement agency; or

(B) a public organization that is operated on a local or statewide level, that pays rewards to persons who report to the organization information about criminal activity, and that forwards the information to the appropriate law enforcement agency.

TEX. GOV'T CODE ANN. § 414.001(2)(A), (B) (Vernon Supp.2003).

Hinterlong argues that the AMHS program does not qualify as a crime stoppers organization under subsection (B) because it is not a "public organization," even though AMHS is a public school. He also argues that the AMHS crime stoppers program does not qualify as a crime stoppers organization under subsection (A) because it does not accept or receive donations; rather, all its tip reward money comes from the Tarrant County crime stoppers. Because we determine that AMHS's crime stoppers program is a public organization under subsection (B), we need not consider Hinterlong's argument that the program does not receive or accept donations as required under subsection (A).

The statute does not define the term "public organization," so Hinterlong cites to common definitions of the terms "public" and "organization." *See* TEX. GOV'T.CODE ANN. § 311.023 (Vernon 1998); *City of Dallas v. Cornerstone Bank, N.A.,* 879 S.W.2d 264, 270 (Tex.App.-Dallas 1994, no writ) (both recognizing that words in statutes are given ordinary meanings unless they are defined by the statute, used regarding particular trade or subject matter, or constitute a term of art). The common definitions provided by Hinterlong, however, demonstrate that the AMHS program is a public organization.

Citing Black's Law Dictionary, Hinterlong urges us to define the term "public" as "proceeding from, relating to, or affecting the whole body of people ... relating to or affecting the whole people of a ... whole community...." Hinterlong relies upon a broad definition of the term "organization," which includes "two or more persons having a joint or common interest...." Here, the entire student body at AMHS is the "community" or "body of people" the crime stoppers program relates to and affects, and the AMHS crime stoppers program is comprised of two or more persons with a common interest. Therefore, utilizing the common definitions urged by Hinterlong, the AMHS program is a "public organization" that qualifies as a crime stoppers organization under subsection (B).

Moreover, several campus crime stoppers programs, such as the one established at AMHS, are set up by, and operate under, the Tarrant County crime stoppers program. AMHS is therefore considered a participating member of the Tarrant County crime stoppers organization. Hinterlong argues, however, that section 414.001(2) does not confer crime stoppers status on the AMHS program simply because it is acting under the Tarrant County program. He cites no authority for this proposition, and the statute does not support such an interpretation. The statute defines a "crime stoppers organization" as a public organization, such as the Tarrant County program in which AMHS participates, and does not limit the number of subgroups that may participate under the umbrella of the local or statewide crime

stoppers organization. We hold that the trial court did not abuse its discretion in determining that the AMHS crime stoppers program meets the statutory definition of a crime stoppers organization.

### B. Crime Stoppers Tip

■ Hinterlong next contends that, even if AMHS crime stoppers qualifies as a crime stoppers organization, nonetheless the communication by the student informant was not a privileged "crime stoppers tip" under section 414.008. Section 414.008 provides, in pertinent part:

> (a) Evidence of a communication between a person submitting a report of a criminal act to the council or a crime stoppers organization and the person who accepted the report on behalf of the council or organization *is not admissible in a court* or an administrative proceeding.
>
> (b) Records of the council or a crime stoppers organization concerning a report of criminal activity *may not be compelled to be produced before a court* or other tribunal except on the motion of a criminal defendant to the court in which the offense is being tried that the records or report contains evidence that is exculpatory to the defendant in the trial of that offense.

TEX. GOV'T CODE ANN. § 414.008(a), (b) (emphasis added). Unauthorized disclosure of crime stoppers privileged information constitutes an offense:

> (a) A person who is a member or employee of the Council or who accepts a report of criminal activity on behalf of a Crime Stoppers Organization commits an offense if the person intentionally or knowingly divulges to a person not employed by a law enforcement agency the content of a report of a criminal act or the identity of the person who made the

report without the consent of the person who made the report.

*Id.* § 414.009(a).

Hinterlong claims the student informant's tip was not a valid crime stoppers tip because: the student did not communicate the alleged tip to a person designated or authorized to receive crime stoppers tips; no evidence exists that the student intended to make a crime stoppers tip; and the AMHS crime stoppers committee did not establish a file on the student's alleged tip or maintain any information regarding the tip. In short, Hinterlong argues that no privilege exists because the proper crime stoppers tip procedure was not followed in this case. We address these arguments in turn.

■ AMHS's student handbook and numerous written crime stoppers flyers indicate that students may report information regarding illegal activities to Dr. Terri Lindsey, who is an assistant principal and a faculty sponsor of the AMHS crime stoppers committee, or place an anonymous call to a specified telephone number. Hinterlong points out that the student here did not follow either of these procedures, but instead communicated the alleged tip to a teacher, Clements, during lunch. Lindsey testified, however, that students could go to any teacher to make a crime stoppers tip and that students were not restricted to reporting tips to only certain individuals. Additionally, although the student handbook and the flyers set forth several alternative ways that a student *may* make a crime stoppers tip, the materials do not indicate these are the *exclusive* ways to make a report. Thus, while Hinterlong correctly asserts that the student handbook and written flyers set forth crime stoppers tip reporting procedures that were not followed by the student here, Lindsey's testimony that a student could make a tip to any teacher created a fact

issue concerning whether the information provided by the student about Hinterlong was properly reported. We will not resolve disputed fact issues in a mandamus proceeding. *See In re Ford Motor Co.,* 988 S.W.2d 714, 722 (Tex.1998) (orig.proceeding).

■ Likewise, the statute itself does not mandate reporting to only particularized persons to invoke the crime stoppers privilege. To the contrary, both section 414.008 and section 414.009 characterize the disclosure triggering the privilege as one to a person "who accepts a report of criminal activity on behalf of a crime stoppers organization." TEX. GOV'T CODE ANN. §§ 414.008–.009. Here, evidence exists that Clements had authority to accept the student informant's tip on behalf of the AMHS crime stoppers program. Accordingly, we hold that the trial court did not abuse its discretion in determining that the student informant made the tip to an appropriate school official, invoking section 414.008's crime stoppers privilege.

■ Moving to Hinterlong's argument that a student informant must *intend* to make a crime stoppers tip in order to trigger the crime stoppers privilege, we find nothing in the statute superimposing an intent requirement on the privilege. The statute protects records of the crime stoppers organization generated after a person makes "a report of a criminal act." *Id.* § 414.008(a), (b). The intent to make a specific crime stoppers tip, as opposed to a report of a criminal act generally, is not required.

■ We also reject Hinterlong's claim that the tip at issue was not a crime stoppers tip because the AMHS crime stoppers committee failed to create a file or maintain information relating to the tip. Again,

to invoke the privilege, the statute requires only that a person submit a report of a criminal act to a person who accepts the report on behalf of a crime stoppers organization. *Id.* Here, the student informant made a report of what he or she believed to be a criminal act to an AMHS teacher and, according to Lindsey, all AMHS teachers are authorized to accept such information on behalf of the AMHS crime stoppers organization. We hold that the trial court did not abuse its discretion in determining that the report made by the student informant in this case constituted a crime stoppers tip, invoking section 414.008's crime stoppers privilege.

Hinterlong also contends that disclosure of the identity of the student informant by real parties in interest is mandated by the rules of evidence and civil procedure. He contends that disclosure of the *identity* of a person with knowledge of relevant facts is required under rules 192.3(c),(i) and 192.5(c)(3) of the Texas Rules of Civil Procedure and rule 501 of the Texas Rules of Evidence even if that person made nondiscoverable, privileged communications. TEX.R. CIV. P. 192.3(c),(i), 192.5(c)(3); TEX.R. EVID. 501.

■ Rule 192.3, governing the scope of discovery, provides: "[i]n general, a party may obtain discovery regarding any matter that is *not privileged* and is relevant to the subject matter of the pending action." TEX.R. CIV. P. 192.3(a) (emphasis added). While the identity of a potential party or witness's identity is generally discoverable, section 414.009 of the crime stoppers statute specifically prohibits disclosure of the identity of a crime stoppers tipster. TEX. GOV'T CODE ANN. § 414.009. Consequently, the identity of a crime stoppers tipster is privileged and beyond the scope of relevant, nonprivileged discovery authorized by 192.3.[5] *See* TEX.R. CIV. P. 192.3(a).

We have addressed each of Hinterlong's arguments claiming that the crime stoppers privilege is not applicable to the present facts; therefore, we overrule his first issue.

## VI. OPEN COURTS VIOLATION

In his second issue, Hinterlong challenges the constitutionality of Texas Government Code section 414.008 as applied to him in the present case. Specifically, he claims that the statutory crime stoppers privilege, applied here to prevent him from discovering the identity of the student informant, violates the open courts provision of the Texas Constitution. *See* TEX. CONST. art. I, § 13.

Real parties in interest contend that the crime stoppers statute has already been held to be constitutional in *Thomas v. State*, 837 S.W.2d 106, 113 (Tex.Crim.App. 1992). At the time the Court of Criminal Appeals decided *Thomas*, the crime stoppers statute provided no exception to the crime stoppers confidentiality privilege set forth in section 414.008. *See* Act of April 30, 1987, 70th Leg., R.S., ch. 147, § 1, 1987 Tex. Gen. Laws 316, 383 (amended 1993, 1997, 1999) (current version at TEX. GOV'T CODE ANN. § 414.008 (Vernon Supp.2002)). *Thomas* involved a criminal defendant's Sixth Amendment Confrontation Clause challenge and Fourteenth Amendment due process challenge to the constitutionality of the then existing crime stoppers statute. *Thomas*, 837 S.W.2d at 109–10. The court of criminal appeals recognized that "the confidentiality provisions of the crime stoppers statute ... reach too far.... Denial of access to information which would have a reasonable probability of affecting the

outcome of a defendant's trial abridges a defendant's due process rights and undermines the court's duty to vindicate Sixth Amendment rights." *Id.* at 112. Consequently, after balancing the defendant's constitutional rights with the State's interest in fostering law enforcement, the court ordered the trial court to review the crime stoppers information in camera and to determine whether any of the information was material. *Id.* at 114. Thus, the court of criminal appeals in *Thomas* determined that the crime stoppers confidentiality privilege *was unconstitutional* and *did abridge* Thomas's due process and Sixth Amendment rights unless the trial court, in violation of the then existing statutory crime stoppers privilege, reviewed the crime stoppers information in camera to determine whether it contained *Brady* material.

In response to the court of criminal appeals' decision in *Thomas*, the legislature amended the statute. In 1993, after the 1992 *Thomas* decision, the legislature codified the *Thomas* opinion's in camera review procedure. *See* Act of May 26, 1993, 73rd Leg., R.S., ch. 711, § 1, 1993 Tex. Gen. Laws 2787, 2787 (amended 1997, 1999) (current version at TEX. GOV'T CODE ANN. § 414.008 (Vernon Supp.2003)). Under the procedure now set forth in the statute, a criminal defendant may file a motion asserting that the crime stoppers privileged report or information contains exculpatory material. TEX. GOV'T CODE ANN. § 414.008(b). The trial court may then subpoena the relevant records, review them in camera, determine whether they contain evidence exculpatory to the defendant, and present to the defendant any exculpatory information in a form not re-

5. Section 414.008 cloaks "records" of a crime stoppers organization with a privilege. When section 414.008 is read in conjunction with section 414.009, making it a class A misde-

meanor to divulge the identity of an informant, it is clear that the privileged "records" necessarily include the tipster's identity. TEX. GOV'T CODE ANN. §§ 414.008–.009.

quiring the disclosure of the identity of the tipster unless required by the state or federal constitution. *Id.* § 414.008(c), (d). Therefore, we cannot agree with the position of real parties in interest that *Thomas* ends the constitutional inquiry in the present case.

In fact, the *Thomas* decision supports Hinterlong's challenge to the constitutionality of the crime stoppers privilege as applied to him in this civil case. Thomas successfully claimed that the then absolute crime stoppers privilege unconstitutionally abridged his federal constitutional rights in a criminal case, and the legislature subsequently created a statutory exception applicable to criminal cases. Hinterlong asserts that because the crime stoppers privilege is absolute in civil cases, providing no corollary civil case exception, it unconstitutionally violates the open courts provision of the Texas Constitution. Hinterlong claims that the lack of an exception to the crime stoppers privilege in civil cases renders the statute unconstitutional as applied to him in his civil case, just as it was unconstitutional as applied to Thomas in his criminal case.

■■■■■ The open courts provision in article I, section 13 of the Texas Constitution provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. The Texas Supreme Court explained:

The provision's wording indicates the high value the drafters and ratifiers placed on the right of access to the courts. First, the language is mandatory: "*shall* be open" and "*shall* have remedy by due course of law." Further, it is all-inclusive: "*all* courts" are to be open; "for *every* person"; for *all* interests, "lands" (real property), "goods" (personal property), "person" (body and

mind), and "reputation" (good name); *at all times*, since there is no emergency exception.

LeCroy v. Hanlon, 713 S.W.2d 335, 339 (Tex.1986) (orig.proceeding). The open courts provision is premised upon the rationale that the legislature has no power to make a remedy by due course of law contingent upon an impossible condition. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex.1990). A statute or ordinance that unreasonably abridges a justiciable right to obtain redress for injuries caused by the wrongful acts of another is void as amounting to a denial of due process. *Sax v. Votteler*, 648 S.W.2d 661, 665 (Tex.1983). To establish an open courts violation, a plaintiff must satisfy a two-part test: (1) he must show he has a well recognized common law cause of action that is being statutorily restricted; and (2) he must show the restriction is unreasonable or arbitrary when balanced against the legislature's actual purpose in enacting the statute. *See Owens Corning v. Carter*, 997 S.W.2d 560, 573 (Tex.), *cert. denied*, 528 U.S. 1005, 120 S.Ct. 500, 145 L.Ed.2d 386 (1999); *Moreno*, 787 S.W.2d at 355.

■■■■■ A strong presumption exists that a valid legislative enactment is constitutional. *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex.1996). Therefore, in analyzing the constitutionality of a statute, we begin with a presumption that the statute is constitutional and that the legislature has not acted unreasonably or arbitrarily. *Id.* The party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *Id.*

### A. Restriction of Cognizable Common Law Causes of Action

■■■■ Hinterlong pleaded defamation, malicious prosecution, and negligence

causes of action against Arlington ISD, Clements, the tipster, and the unknown person or persons whom he alleges planted the Ozarka water bottle in his vehicle.[6] These claims are all well-established common law causes of action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997) (codifying common law libel cause of action); *Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex.1994) (recognizing slander as a common law cause of action); *In re W.C.*, 56 S.W.3d 863, 872 n. 3 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (recognizing malicious prosecution as a common law claim); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 903 (Tex.2000) (recognizing that "all negligence actions are common-law claims").

Real parties in interest contend for the first time in their motion for rehearing that, at common law, Arlington ISD has sovereign immunity against Hinterlong's claims and that Clements has official immunity from such claims. They further contend that the Texas Tort Claims Act's limited waiver of immunity with regard to school districts for injuries resulting from motor vehicle accidents is not applicable in this case. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021, 101.051 (Vernon 1997). Real parties in interest therefore contend that Hinterlong has no cognizable common law claims and that therefore the open courts guarantee is not implicated.

Real parties in interest fail to consider, however, that regardless of his claims against Arlington ISD and Clements, Hinterlong has pleaded cognizable common law claims against both the tipster and the person or persons who planted the Ozarka water bottle in his vehicle; neither of these parties is entitled to immunity.

Additionally, real parties in interest fail to distinguish between immunity from suit and immunity from liability, which are two distinct principles. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). While immunity from suit (sovereign immunity) abridged claims at common law, immunity from liability (official immunity) is an affirmative defense to common law claims that must be pleaded or it is waived. *See Green Int'l, Inc. v. State*, 877 S.W.2d 428, 436–37 (Tex.App.-Austin 1994, writ dism'd) (holding sovereign immunity is common-law doctrine that preceded Texas Constitution so application of doctrine to preclude litigation of breach of contract and quantum meruit claims does not violate open courts provision); *Jones*, 8 S.W.3d at 638 (recognizing distinction between immunity from liability, which is an affirmative defense that must be pleaded or it is waived, and immunity from suit, which is jurisdictional and requires complaining party to establish state's consent to be sued); *Hayes v. Patrick*, 71 S.W.3d 516, 521 (Tex.App.-Fort Worth 2002, no pet.) (noting official immunity is common law affirmative defense that protects government officers and employees from liability for conduct that would otherwise be actionable). Absent both pleading and proof of immunity, Clements can be held liable under Hinterlong's claims. *See Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex.2000) (noting that official immunity is affirmative defense that protects government employees from personal liability, and that, to be entitled to summary judgment on immunity defense, employee must conclusively prove each element of defense); *see also Myers v. Doe*, 52 S.W.3d 391, 395–96 (Tex.App.-Fort Worth 2001, pet. denied) (addressing school district employees' en-

---

6. Real parties in interest concede that the crime stoppers privilege is not an immunity statute and that the tipster is not immune from suit.

titlement to immunity if all elements under section 22.051(a) of the Education Code are established); *see also* TEX. EDUC. CODE ANN. § 22.051(a) (Vernon 1996) (stating that professional school district employees are not personally liable for actions incident to or within the scope of duties performed that involve the exercise of judgment or discretion, unless there is an excessive use of force or negligent discipline resulting in bodily injury to students).

Clements is also not cloaked with immunity from personal liability where her actions are not incident to or within the scope of her professional duties or while she is performing duties that are ministerial and, therefore, do not involve the exercise of judgment or discretion. *See* TEX. EDUC.CODE ANN. § 22.051; *Myers,* 52 S.W.3d at 396; *cf. Kassen v. Hatley,* 887 S.W.2d 4, 11 (Tex.1994) (holding that government-employed medical personnel are not immune from tort liability if the character of the discretion they exercise is medical and not governmental). Hinterlong's pleadings allege that Clement's acts and omissions involved ministerial duties and that, at certain times, Clements acted outside the scope of her employment or official duties. Hinterlong has, therefore, pleaded cognizable common law claims against Clements, subject to her affirmative defense of immunity.

Accordingly, we conclude that Hinterlong has asserted well-established common law causes of action against Clements, the tipster, and the person or persons who planted the Ozarka water bottle. Regardless of whether the trial court later holds that Arlington ISD is sovereignly immune from suit, Hinterlong's assertion of these common law causes of action against Clements, the tipster, and the person or persons who planted the Ozarka water bottle satisfy the open courts predicate of assertion of well-established common law causes of action.

■ Hinterlong's mere pleading of common law causes of action, however, does not end our analysis. Hinterlong must possess "a justiciable right to obtain redress for injuries caused by the wrongful acts of another." *See Sax,* 648 S.W.2d at 665. The supreme court has explained that, in the context of a criminal defendant seeking civil redress, the defendant's "illegal conduct ... is the cause in fact of any injuries flowing from the conviction, unless the conviction has been overturned." *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 498 (Tex.1995).

In *Peeler,* a criminal defendant pleaded guilty, but then sued her lawyer for legal malpractice. The supreme court held that, although the client made a prima facie case of malfeasance by showing her attorney failed to communicate an immunity offer to her, nonetheless, she could not recover unless she first established that she had been exonerated of the crime. *Id.* at 497–98. The court reasoned that, absent exoneration of the crime, she could not show her attorney's actions, even if negligent, were the cause of her injuries. *Id.* at 498.

Here, Hinterlong was acquitted of the minor in possession charge. Had Hinterlong not been acquitted, he would possess no justiciable common law right to obtain redress because he would not be able to show that the wrongful act of another, as opposed to the criminal conduct for which he was convicted, caused his injuries. In this instance, as a matter of law, application of the statutory crime stoppers privilege to him would not violate the open courts provision of the Texas Constitution. *See id.*

Applying the supreme court's causation reasoning in *Peeler* to a high school crime

stoppers tip situation, a student's mere exoneration of criminal charges does not necessarily give rise to "a justiciable right to obtain redress for injuries caused by the wrongful acts of another." *See Sax,* 648 S.W.2d at 665. The bare fact of a student's exoneration does not imply that any civil injuries suffered by the student were *caused by the wrongful acts of another.* A student could be exonerated for a variety of procedural or substantive reasons unrelated to any wrongful or nonwrongful acts of another. The violation of school policy, here possession of a thimble full of alcohol, therefore remains the sole proximate cause of any civil damages the student suffers *unless* the student pleads and offers prima facie proof that his injuries were *caused by the wrongful acts of another.* Thus, to meet his burden of showing that the application .of the crime stoppers privilege unconstitutionally abrogated his cognizable common law causes of action, Hinterlong was required to plead and to offer prima facie proof that his injuries were caused by the wrongful acts of another, that is, real parties in interest, the tipster, or the person or persons who planted the Ozarka water bottle. *Accord Peeler,* 909 S.W.2d at 498 (recognizing no tort recovery is available if defendant's illegal acts remain the sole proximate cause of his injuries); *see also Earle v. Ratliff,* 998 S.W.2d 882, 889 (Tex.1999) (requiring party asserting open courts violation as basis for avoiding summary judgment on limitations in 4590i suit to raise a fact issue on the applicability of the provision).

Hinterlong pleaded that real parties in interest were negligent in acting on the tip and that real parties in interest and the unknown defendants maliciously prosecuted and defamed him, causing him to suffer extreme mental anguish, public humiliation, and embarrassment; causing injury to his reputation, health, and character; causing him to be suspended from AMHS; and causing him to be required to attend alternative school. Hinterlong clearly pleaded a right to redress for injuries caused by the wrongful acts of another.

In support of his motion to compel, Hinterlong provided the depositions of Clements, Hightower, Lindsey, and Clark. He also provided the exhibits referenced in each of these depositions. Jacoby's record of Hinterlong's appeal conference indicates that the Hinterlongs presented "compelling" evidence that Hinterlong was "set up." The keys to Hinterlong's Blazer were stolen by AMHS students during the July trespassing incident. The Hinterlongs pressed charges against approximately thirteen AMHS students. Approximately three months later, three days before the regional tennis tournament, a tip was given to Clements that Hinterlong was "hoarding" alcohol in the trunk of his vehicle for the regional tennis tournament. Hinterlong's Blazer did not have a trunk and only a thimble full of a substance never proved to be alcohol was found, which is hardly a stockpiling or hoarding. Moreover, the tip was not made in accordance with the typical AMHS crime stoppers procedures. Although the unique path the tip followed does not invalidate its crime stoppers tip status, it certainly supports Hinterlong's contention that the tip was a set-up involving "planted" evidence. Finally, Hinterlong cooperated with Clark in her search of his Blazer and indicated as they walked to her office that "this may involve something else." We hold that this evidence presented by Hinterlong constitutes a prima facie showing that his alleged injuries were caused by the wrongful acts of Clements, the tipster, and the person or persons who planted the Ozarka water bottle in his vehicle. We further hold that Hinterlong, having been exonerated of the minor in possession charge

and having come forward with prima facie evidence that his claimed injuries were caused by the wrongful acts of another, has satisfied his burden of showing that he possesses cognizable common law causes of action against Clements, the tipster, and the person or persons who planted the Ozarka water bottle for malicious prosecution, defamation, and negligence.

■ We next address whether the crime stoppers privilege restricts Hinterlong's common law causes of action. Clearly it does. The privilege operates as an almost complete bar to Hinterlong's suit against the tipster and the person or persons who planted the Ozarka water bottle. The privilege likewise restricts Hinterlong's claims against Clements because the identity of the tipster and information provided by the tipster may be critical to Hinterlong's tort claims.

### B. Restriction of Causes of Action Unreasonable When Balanced Against Statutory Purpose

■ Having determined that the crime stoppers privilege restricts Hinterlong's cognizable common law claims, we next determine whether the abrogation of those claims is arbitrary or unreasonable when balanced against the legislature's actual purpose in enacting the statute. *Lucas v. United States*, 757 S.W.2d 687, 690 (Tex.1988); *Sax*, 648 S.W.2d at 665–66. In making this determination, we consider both the general purpose of the statute and the extent to which the litigant's right to redress is affected. *Sax*, 648 S.W.2d at 665–66.

The extent of the abrogation of Hinterlong's right to redress is almost total. He cannot prosecute his common law causes against either Clements, the tipster, or the person or persons who planted the Ozarka water bottle for "injury done him, in his

...·person or reputation" without learning the tipster's identity. His inability to obtain discovery concerning how the tipster obtained the information provided to Clements severely impedes Hinterlong's prosecution of his common law causes of action against these parties.

■ The open courts provision test balances the legislature's actual purpose in enacting a law against that law's interference with the individual's right of access to the courts. *LeCroy*, 713 S.W.2d at 341. In addressing a "facial" or "per se" open courts constitutional challenge to legislative action restricting common law remedies for well established common law causes of action for injuries to one's lands, goods, person or reputation, courts examine whether the legislature reasonably substituted another remedy or whether legislative restriction of the common law causes of action was a reasonable exercise of the police power in the interest of the general welfare. *See Lebohm v. City of Galveston*, 154 Tex. 192, 195–96, 275 S.W.2d 951, 955 (1955) (op. on reh'g) (involving facial challenge to legislatively approved city charter provision exempting city from all liability for injuries caused by defective streets); *see also Owens Corning*, 997 S.W.2d at 573–74 (involving facial challenge to Texas' borrowing statute); *Hanks v. City of Port Arthur*, 121 Tex. 202, 205, 48 S.W.2d 944, 945 (1932) (involving facial challenge to ordinance exempting Port Arthur from all liability for injuries caused by defective streets). In addressing an "as-applied" open courts constitutional challenge to legislative action restricting common law remedies for well established common law causes of action for injury to one's lands, goods, person or reputation, courts also examine whether the restriction is unreasonable or arbitrary when balanced against the legislative purpose for the statute, including a purpose of

promoting general public welfare through the exercise of police power. *See Sax*, 648 S.W.2d at 666 (involving challenge to statute of limitations set forth in insurance code article 5.82 [article 4590i's predecessor] *as applied to minors*); *see also Weiner v. Wasson*, 900 S.W.2d 316, 318–19 (Tex. 1995) (involving challenge to article 4590i's statute of limitations *as applied to minors*). That is, a statutory restriction of a well established common law cause of action may be facially or per se constitutional under the Texas Constitution's open courts provision, but nonetheless violate the open courts provision of the Texas Constitution *as applied to a particular category of people* if the restriction of the common law cause of action is unreasonable when balanced against the purpose of the statute. *See Sax*, 648 S.W.2d at 667 (recognizing that the "purpose and basis for article 5.82 are legitimate" but nonetheless holding the restriction unreasonable as applied to minors); *Weiner*, 900 S.W.2d at 318 (same).

Here, the legislature has substituted no remedy in place of its abrogation of Hinterlong's common law causes of action for malicious prosecution, defamation, or negligence. Thus, the statutory abrogation of these common law causes of action is not rendered reasonable based on a substitute remedy. *Cf. Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 510 (Tex.1995) (holding workers' compensation statute does not unreasonably cut off common law claims because it provides a substitute remedy).

■ To determine a statute's purpose, we consider the "object sought to be obtained" by the statute. *See* Tex. Gov't Code Ann. § 311.023 (Vernon 1998). The purpose served by the crime stoppers statute is to foster the detection of crime and to encourage persons to report information about criminal acts. *Id.* § 414.005(2) (Vernon Supp.2003); *Thomas*, 837 S.W.2d at 113. Crime stoppers tips are to help law enforcement agencies detect and combat crime by increasing the flow of information to and between law enforcement agencies. Tex. Gov't Code Ann. § 414.005(5). Additionally, according to the statute, reward money is to be paid to those persons who report criminal activity. *Id.* § 414.010–.011. There is no question that the crime stoppers statute here has a valid basis and purpose, i.e., is a valid exercise of police power for general public welfare, that being to promote, and to encourage through the payment of reward money, *legitimate* tips concerning criminal activity. *See Sax*, 648 S.W.2d at 667 (recognizing in as-applied open courts challenge that the "purpose and basis for article 5.82 are legitimate"); *Owens Corning*, 997 S.W.2d at 574 (holding legislature's adoption of borrowing statute was valid exercise of police power where statute restricted time period for bringing suit in Texas to time period allowed in state where cause of action arose).

The question then, pursuant to Hinterlong's as-applied open courts challenge, is whether the application of the crime stopper statutory privilege to restrict common law causes of action brought by a student who has been exonerated of criminal charges and who has pleaded and offered prima facie proof of a right of redress for the wrongful conduct of another, is arbitrary or unreasonable when balanced against the legitimate purpose of the statute. We hold that it is. In Hinterlong's civil suit, application of the statutory crime stoppers privilege as a complete bar to disclosure of AMHS's crime stoppers records, including the tipster's identity, and the resultant restriction of Hinterlong's common law causes of action does not promote the purpose of the crime stoppers statute. In fact, this application of the statute in the context of AMHS's zero

tolerance policy actually thwarts the purpose of the crime stoppers statute. Such an application, by totally insulating the tipster, promotes reports of set up criminal activity involving "planted" evidence on high school campuses. A student could place a thimble full of alcohol in another student's locker, car, notebook, purse, or backpack, and, as explained by Clark, cause the student's automatic expulsion pursuant to the zero tolerance policy. A tipster, without risking disclosure of his or her identity or any accountability in a civil lawsuit, could place alcohol in another student's possession before school, at lunch, or during a break, and then make a crime stoppers tip, ensuring the student's expulsion and ineligibility for a football play-off game, a track meet, a regional tennis tournament, or cheerleader tryouts. The purpose of the crime stoppers statute is to promote *legitimate* reports of criminal activities, not to shield a student who for personal gain or retaliatory motives makes a set up tip to achieve expulsion of a rival or a competitor.

In fact, outside the ambit of the public school zero tolerance policy, nonlegitimate crime stoppers tips are not acted upon. Police must independently corroborate information provided by an anonymous tipster, including a crime stoppers tipster, in order to justify even an investigative detention based on the tip. *See, e.g., Florida v. J.L.,* 529 U.S. 266, 273–74, 120 S.Ct. 1375, 1380, 146 L.Ed.2d 254 (2000) (holding that an anonymous tip must be corroborated to provide reasonable suspicion justifying an investigatory stop); *Parish v. State,* 939 S.W.2d 201, 202–05 (Tex.App.-Austin 1997, no pet.) (same). Consequently, nonlegitimate or set up crime stoppers tips that cannot be corroborated are not acted upon and are not rewarded. Thus, in cases involving crime stoppers tips occurring outside the unique context of public schools' zero tolerance setting, the issue of civil damages for illegitimate or set up tips is unlikely to ever arise.

▆ Finally, we note that when the legislature enacted the crime stoppers statute in 1987, zero tolerance policies did not exist at our public schools. Thus, the legislature could not have anticipated the juxtaposition between the statutory crime stoppers privilege and schools' zero tolerance policies, resulting in the opportunity for abuse of the crime stoppers tip program that allegedly occurred here. The statute was certainly not intended for use as a shield from accountability for set up tips made for personal or retaliatory reasons. *See* TEX. GOV'T CODE ANN. § 311.023; *Finley v. Steenkamp,* 19 S.W.3d 533, 542 (Tex.App.-Fort Worth 2000, no pet.) (recognizing court must consider the consequences that would follow from its construction of a statute and avoid absurd results).

We hold that the purpose of the crime stoppers privilege does not justify, in the limited public school zero tolerance setting, the resultant almost total abrogation of Hinterlong's common law causes of action against the tipster and the person or persons who planted the Ozarka water bottle or the partial abrogation of Hinterlong's common law causes of action against Clements. *See Lucas,* 757 S.W.2d at 691; *Sax,* 648 S.W.2d at 665–66. Hinterlong met his burden of establishing that the application of the crime stoppers privilege to him in this case violates the Texas Constitution's open courts provision by restricting his recognized common law causes of action against Clements, the tipster, and the person or persons who planted the Ozarka water bottle in a way that is arbitrary or unreasonable when balanced against the legislative purpose in enacting the statute. Thus, we hold that the trial court abused its discretion by refusing to declare the

absolute crime stoppers privilege set forth in section 414.008 of the Texas Government Code unconstitutional as applied to Hinterlong in the present case. *See, e.g., Walker*, 827 S.W.2d at 840 (recognizing a trial court has no discretion in determining what the law is or applying the law to the facts).

## C. Appropriate Remedy

■ Although the crime stoppers privilege, as applied to Hinterlong in this case, violates the open courts provision of the Texas Constitution, Hinterlong nonetheless is not entitled to mandamus relief unless he possesses no adequate remedy at law. Without knowing the identity of the tipster or how the tipster learned Hinterlong was supposedly hoarding alcohol in his trunk, Hinterlong will be forced "to try his lawsuit, debilitated by the denial of proper discovery, only to have that lawsuit rendered a certain nullity on appeal." *Id.* at 841. Any judgment against an unnamed, anonymous tipster or person who planted the Ozarka water bottle is, in effect, a "certain nullity." *See id.* Moreover, the trial court's discovery order here disallowed discovery that cannot be made a part of the appellate record, thereby denying us the ability on appeal to evaluate the effect of the trial court's error. *See In re Colonial Pipeline*, 968 S.W.2d at 941. Finally, Hinterlong's remedy of this error by appeal is inadequate because he is constitutionally guaranteed that the Texas courts "shall be open, and every person for any injury done him, in his lands, goods, *person or reputation,* shall have remedy by due course of law." TEX. CONST. art. I, § 13 (emphasis added); *see also Tilton*, 925 S.W.2d at 682. Because Hinterlong has no adequate remedy at law, mandamus relief is appropriate.

We now address the scope of the mandamus relief to be granted Hinterlong. Hin-

terlong, of course, requests that we mandamus the trial court to order real parties in interest to comply with his discovery requests. We are not convinced, however, that this is the proper remedy.

We understand AMHS's unfortunate need for a zero tolerance policy. We also understand the usefulness of a crime stoppers program at AMHS and the need for tipster anonymity. We note that the court of criminal appeals in *Thomas*, although finding application of the crime stoppers privilege to be unconstitutional, did not order Thomas's unlimited access to the privileged material. Instead, it ordered the trial court to conduct an in camera review of the information and to determine if the information contained *Brady* evidence. *Thomas*, 837 S.W.2d at 114.

The Amarillo Court of Appeals in *Martin v. Darnell* followed the *Thomas* in camera review procedure in a mandamus action. *Martin v. Darnell*, 960 S.W.2d 838, 845 (Tex.App.-Amarillo 1997, orig. proceeding). In *Martin*, a criminal defendant sought discovery of a prosecution witness's financial records. The witness was an employee in the records division of the Lubbock Police Department and was used by the department in an undercover investigation into the illegal dissemination of police accident reports. *Id.* at 840. The defendant alleged that he had paid the witness to provide him with police reports before the beginning of the investigation and sought discovery of the witness's bank records and income tax returns. *Id.* Ultimately, the Amarillo court held that the *Thomas* in camera review procedure would "satisfy the government's interest in protecting its witnesses while satisfying [the defendant's] Sixth Amendment rights of confrontation and compulsory process." *Id.* at 845.

Additionally, Rule 508 of the Texas Rules of Evidence provides guidance. It is titled, "Identity of Informer," and, after

generally recognizing that the identity of an informant may be privileged, provides:

**(c) Exceptions.**

. . . .

(2) *Testimony on merits.* If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of a material issue on the merits in a civil case to which the public entity is a party . . . and the public entity invokes the privilege, the court shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but the court may direct that testimony be taken if it finds that the matter cannot be resolved satisfactorily upon affidavit. If the court finds that there is a reasonable probability that the informer can give the testimony, and the public entity elects not to disclose the informer's identity, the court in a civil case may make any order that justice requires.... Evidence submitted to the court shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the public entity. All counsel and parties shall be permitted to be present at every stage of proceedings under this subdivision except a showing in camera, at which no counsel or party shall be permitted to be present.

TEX.R. EVID. 508(c)(2).

We, like the *Thomas* and *Martin* courts, adopt a version of an in camera review procedure here. We agree that authorizing *unlimited* access to crime stoppers information would unnecessarily compromise public high schools' interest in fostering the reporting of suspected criminal activity. *See Thomas,* 837 S.W.2d at 114. Both AMHS's interests and Hinterlong's constitutional rights under the Texas Constitution's open courts provision may be satisfied here through application of the in camera procedures set forth in Texas Rule of Evidence 508. *See* TEX.R. EVID. 508.

Applying rule 508 to the present facts, the public entity, here, Arlington ISD and Clements on Arlington ISD's behalf, has invoked the crime stoppers privilege. Hinterlong clearly has established that the tipster "may be able to give testimony necessary to a fair determination of a material issue on the merits in a civil case": specifically, testimony as to how and from whom the tipster purportedly learned or heard Hinterlong was hoarding alcohol in the trunk of his car so that Hinterlong may determine any link between the tipster and the allegedly disgruntled student trespassers or any other person or persons who may have planted the Ozarka water bottle in his vehicle. Thus, the trial court shall order real parties in interest to submit in camera an affidavit from the student tipster demonstrating how he or she learned of purported stockpiling of alcohol in Hinterlong's trunk.

If the student tipster's affidavit demonstrates that the tipster possessed personal knowledge of the information provided to Clements, the trial court may order disclosure of any information provided by the tipster necessary to a fair determination of a material issue on the merits in Hinterlong's case, including disclosure of the tipster's identity. *See* TEX.R. EVID. 508(c)(2) (authorizing trial court to make any order that justice requires if the court finds that there is a reasonable probability that the informant can give testimony necessary to a fair determination of a material issue on the merits in a civil case); TEX. GOV'T CODE ANN. § 414.008(c), (d) (authorizing trial court disclosure of tipster's identity in

criminal case when "the state or federal constitution requires the disclosure"). The trial court shall take appropriate means to ensure that the tipster's identity is protected, however, unless the trial court believes disclosure is necessary to a fair determination of a material issue on the merits in Hinterlong's case.

If, however, the tipster's affidavit reveals that the tip was based on hearsay, then the trial court shall order disclosed to Hinterlong the name of the person or persons providing the information to the tipster. *See* TEX.R. EVID. 508(c)(2). The trial court may, if necessary to a fair determination of a material issue on the merits in Hinterlong's case or if the trial court is not satisfied that the information provided is reasonably reliable, order that the tipster's identity be disclosed and shall make any other order justice requires. *See* TEX.R. EVID. 508(c)(2)-(3); *see also* TEX. GOV'T CODE ANN. § 414.008(c), (d). Any evidence that the trial court determines shall not be disclosed shall be sealed and made part of the trial court's record in this case. *Accord Thomas,* 837 S.W.2d at 114; TEX.R. EVID. 508.

Real parties in interest contend on rehearing that this remedy is improper because: (1) it orders them to produce a document that is not within their possession, custody, or control; and (2) it arguably exposes them to criminal punishment under section 414.009. *See* TEX.R. CIV. P. 192.3(b) (requiring parties to produce documents that are within their "possession, custody, or control"); TEX. GOV'T CODE ANN. § 414.009(a), (b) (making it a class A misdemeanor for any person who accepts a report of criminal activity on behalf of a crime stoppers organization to intentionally or knowingly divulge the content of the crime stoppers report or the informant's identity, without the informant's consent).

As recited above, Rule 508 specifically authorizes the use of affidavits to place testimony of an informer, like the tipster here, before the trial court for an in camera review. TEX.R. EVID. 508(c)(2). Nothing in Rule 508 indicates that only affidavits already in the possession, custody and control of the public entity are to be utilized. *Id.* To the contrary, the Rule's provision that ordinarily the public entity should be allowed the opportunity to show facts in camera via an affidavit suggests that this vehicle, that is the affidavit of the informer, impinges the least on the asserted privilege. *Id.* Real parties in interest may certainly decline the opportunity to present an affidavit from the tipster to the trial court for an in camera review. In that case, based on our determination that the absolute crime stoppers privilege as applied in this case violates the open courts provision of the Texas Constitution, the trial court shall order the tipster's identity disclosed. *See* TEX. GOV'T CODE ANN. § 414.008(c), (d).

As for real parties in interest's contention that disclosure of the tipster's identity arguably exposes them to criminal punishment under section 414.009, we disagree for several reasons. First, it is only unauthorized disclosure, or disclosure without the informant's consent, that invokes these penalties. *See id.* § 414.009(a). If the tipster provides the affidavit, it follows that the penalties would not be invoked.

Additionally, the disclosure ordered by this court would not subject real parties in interest to the criminal and other penalties set forth in section 414.009 because the disclosure itself would be privileged. The absolute immunity of parties and witnesses from subsequent liability for their testimony in judicial proceedings is well established at common law. *Briscoe v. LaHue,* 460 U.S. 325, 331–35, 103 S.Ct. 1108, 1113–15, 75 L.Ed.2d 96 (1983). Any communica-

tion, even perjured testimony, made in the course of a judicial proceeding, cannot serve as the basis for a suit in tort. *Laub v. Pesikoff,* 979 S.W.2d 686, 689 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *see also Bird v. W.C.W.,* 868 S.W.2d 767, 771–72 (Tex.1994) (concluding that communications made during the course of judicial proceedings are privileged). Because the proper administration of justice requires full and free disclosure from witnesses unhampered by fear of retaliatory lawsuits, Texas courts have consistently applied the privilege to claims arising out of communications made in the course of judicial proceedings, regardless of the label placed on the claim and even though the communications might otherwise subject a witness to statutory liability. *See Bird,* 868 S.W.2d at 772; *Laub,* 979 S.W.2d at 690; *Leigh v. Parker,* 740 S.W.2d 101, 103–04 (Tex.App.-Austin 1987, writ denied) (holding that psychologist witness was protected against liability for statements made during course of judicial proceedings and ordered by trial court, superseding statutory liability for psychologist's disclosure of privileged patient information). Accordingly, any disclosure ordered and made during the course of these judicial proceedings would be privileged.

Finally, because we have determined that the statutory crime stoppers privilege, as applied in this case, violates the open courts provision of the Texas Constitution, it follows that the penalties provided in section 414.009 for violating the statutory privilege are likewise unenforceable as applied in this case. An unconstitutional statute is void and cannot provide a basis for any right or relief. *Accord Reyes v. State,* 753 S.W.2d 382, 383–84 (Tex.Crim. App.1988) (noting in a per se constitutional challenge that an unconstitutional statute "is invalid and imposes no duties, confers no rights, creates no office, bestows no power, affords no protection, and justifies

no acts performed under it ....."); *cf. Bullock v. ABC Interstate Theatres, Inc.,* 557 S.W.2d 337, 340–41 (Tex.Civ.App.-Austin 1977, writ ref'd n.r.e.) (concluding that once statutory tax was declared unconstitutional, the exemption created by payment of such tax likewise became inoperative), *cert. denied,* 439 U.S. 894, 99 S.Ct. 253 (1978). We therefore reject real parties in interest's suggestion that disclosure will expose them to criminal punishment.

## VII. CONCLUSION

In summary, we conclude that the crime stoppers privilege, as applied to Hinterlong under the facts of this case, unreasonably and arbitrarily restricts his common law claims when those claims are balanced against the purpose of the statute. Accordingly, we hold that the statute, as applied in this case, violates the open courts provision of the Texas Constitution. We conditionally grant Hinterlong's petition for writ of mandamus and direct the trial court to vacate its August 24, 2001 order denying Hinterlong's motion to compel the production of evidence regarding the student informant's identity and other relevant information surrounding the crime stoppers tip. *See* TEX.R.APP. P. 52.8(c). We order the trial court to conduct the rule 508(c)(2) in camera inspection, outlined above, within thirty (30) days of the date of this opinion. *See* TEX.R. EVID. 508(c)(2). We are confident the trial court will vacate its order and will conduct the necessary rule 508 procedures as we have directed. Our writ will issue only if the trial court refuses to do so.