COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-07-397-CV

 

 

IN RE ROXSANE R.                                                                              

 

                                                    

 

                                              ------------

 

            FROM
THE 231ST DISTRICT COURT OF TARRANT
COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

This is
an original proceeding in which relator Roxsane R., J.R.=s
mother, contends that this court should compel the trial court to dismiss the
pending plea in intervention filed by real parties in interest Jennifer and
Gary S., former foster parents of J.R., in which they seek to be named managing
conservators of J.R.  We conditionally
grant the writ.[1]








Background

On October 30, 2003, the Texas Department of Family and Protective
Services (TDFPS)[2]
filed an original petition for emergency removal of four-month-old J.R. in the
170th District Court of McLennan County, seeking permanent managing
conservatorship.  J.R. was with his
mother Roxsane in Wisconsin at the time and was removed there.  J.R. was placed with the foster parents
around this time.  TDFPS amended its
petition on November 9, 2004, adding a paragraph seeking termination of the
parent-child relationship.













Roxsane
filed a motion to dismiss on April 11, 2005, in which she alleged that the
trial court should dismiss the case if a final order was not entered by the
statutory dismissal date, April 28, 2005.[3]  The trial court held a jury trial the next
day, April 12, 2005.  The trial court=s charge
to the jury submitted only the termination ground, not the ground seeking to
have TDFPS named permanent managing conservator.[4]  The jury found that Roxsane=s
parental rights should not be terminated.













  Nothing in the record shows that Roxsane ever
moved for a judgment on the verdict.  On
April 19, 2005, after the jury trial but before the trial court had
rendered judgment on the verdict, the foster parents filed a plea in
intervention, alleging standing under family code section 102.003(12), which
allows foster parents who have had a child placed in their home Afor at
least 12 months ending not more than 90 days preceding the date of the filing
of the petition@ to file an original suit
affecting the parent-child relationship (SAPCR).  Tex.
Fam. Code Ann. ' 102.003(12) (Vernon Supp.
2007).  Their petition alleged that it
was in J.R.=s best interest that TDFPS
continue to be managing conservator under family code section 263.401(d)[5]
or 263.403,[6]
or inthe alternative, that the trial court appoint the foster parents as J.R.=s
managing conservators.

Although
there is no written objection to the plea in intervention in the mandamus
record, Roxsane must have objected to the foster parents=
standing to intervene because the trial court ruled on the standing issue in a
hearing on April 26, 2005 as follows:

[I]t=s being raised at this point in time as to
whether or not they can participate in this proceeding.  The Court will, with some trepidation, rule
at this point in time that [the foster parents do] have standing, believing that
intervention and standing to file an original suit are essentially the same in
regard to this matter. 

 

At the hearing, the trial court
also determined that the evidence warranted the issuance of a monitored return
order under section 263.403[7]
of the family code.








On April
28, 2005Cthe
section 263.401 enter-a-final-order-or-dismiss dateCthe
trial court entered a monitored return order under section 263.403, finding
that TDFPS should continue to serve as temporary managing conservator but that
J.R. should be returned to Roxsane under the supervision of TDFPS.  The trial court set a new mandatory dismissal
date of not more than 180 days from the date of its monitored return order,
October 25, 2005, as required by the statute. 
See id. ' 263.403(b)(2).  TDFPS was to remain temporary managing
conservator during this transition.

The
monitored return order did not acknowledge or specifically encompass the jury=s
verdict that Roxsane=s parental rights should not be
terminated but states that Athe
Court finds that placing [J.R.] in the home of [Roxsane] while retaining
jurisdiction is in the best interest of the child to establish a safe
transition of the child who has been out of [Roxsane=s] home
for approximately 18 months.@  The court ordered TDFPS to monitor the
placement of J.R. in Roxsane=s home
and to remove him Aif circumstances indicate that
the home is no longer a safe environment.@  During this six month period, TDFPS was to
provide unlimited counseling for Roxsane and counseling and play therapy for
J.R. as appropriate.  The trial court
also ordered the foster parents to assist with the transition into Roxsane=s home
and ordered interim visitation between J.R. and the foster parents as agreed to
or proposed by the parties.[8]









On May
31, 2005, the trial court[9]
transferred the case to Tarrant County, where Roxsane was residing.  The transfer order states that J.R. Ais to be
returned to the home of [Roxsane] on May 31, 2005@ but
that the provisions of the monitored return order were to remain in effect
until the end of the six month period. 
Upon transfer to Tarrant County, the case was assigned to the 322nd
District Court.

On
October 21, 2005, four days before the suit was to be dismissed in accordance
with section 263.401, the 322nd District Court, the Honorable Frank Sullivan
presiding, held a hearing on several issues in the case.  The court signed an order granting TDFPS=s motion
for nonsuit of its AMovant=s
Petition Seeking Termination of the Parent-Child Relationship in this cause@ and
removing TDFPS as J.R.=s temporary managing
conservator.  The order did not designate
a conservator for J.R., temporary or otherwise. 
The court also appointed an amicus attorney for J.R.








That
same day, Roxsane filed a pro se AMother=s
Objection to Conservators and Amicus Attorney.@  In it, she stated that she objected to the
foster parents being appointed conservators of J.R. and to the appointment of an
amicus attorney for J.R.  Specifically,
Roxsane objected to having to share in the expense of an amicus attorney.  Roxsane also requested that the case be
dismissed and that she would Alike to
be re-united with [her] son permanently as soon as possible without a
conservator.@ 
Further, Roxsane stated that the foster parents had not had any contact
with J.R. for five of the six months since the monitored return order was
signed.

On
January 13, 2006, Judge Sullivan signed an order noting that a hearing had been
held on October 21, 2005, that the trial court granted a nonsuit to TDFPS, and
that Aa
separate order was signed.@  Judge Sullivan ordered that J.R. would remain
in Roxsane=s custody until Aa
hearing could be had on temporary orders.@  His order also states that A[t]he
Court finds that, on the issue of standing of [the foster parents], the 74th
Judicial District Court of McLennan County has already ruled that [the foster
parents] have standing in this matter.@  Judge Sullivan did not enter a final order in
the case as required by former section 263.403(b)(2) governing dismissal upon
the expiration of a monitored return order.








Next,
the trial court=s associate judge entered
temporary orders sometime before January 23, 2006,[10]
which Roxsane appealed to Judge Sullivan. 
On February 2, 2006, Judge Sullivan signed an order indicating that he
had heard Roxsane=s AAppeal
of Temporary Orders@ affirming the temporary orders
with the following changes:  (1) Roxsane
was ordered to give the amicus attorney access to J.R.;  (2) Roxsane was ordered to give the foster
parents possession of J.R. on the first and third weekends of each month from
6:00 p.m. on Friday to 6:00 p.m. on Sunday; and (3) Roxsane was enjoined from
changing her residence from Tarrant County during pendency of the suit.  Again, the judge did not designate a
conservator for J.R.[11]








On May
11, 2006, Roxsane filed a APlea to
the Jurisdiction/Motion to Strike Plea in Intervention/Motion to Dismiss@ (motion
to dismiss) asking the trial court to dismiss the suit under family code
section 263.401 because the trial court had not entered a Afinal
order@ by the
October 25, 2005 statutory dismissal date. 
Roxsane argued that the intervention was untimely, that the foster
parents had no standing to intervene in the suit, and that the 322nd District
Court failed to follow the 74th District Court=s order
setting the final dismissal date as October 25, 2005.  Roxsane also argued that the plea in
intervention should be stricken because it complicates the case with excessive
multiplication of issues, it is not necessary to protect the interests of the
foster parents, it places an undue burden on Roxsane, both financially and
mentally, and the temporary visitation is a source of confusion for J.R.  Judge Sullivan denied the motion on July 7,
2006 by written order.

On
August 9, 2006, the foster parents filed a first amended petition seeking sole
managing conservatorship of J.R.  Roxsane
responded on August 22, 2006, again challenging the standing of the foster
parents.  On January 1, 2007, the
Honorable Nancy Berger was sworn in as presiding judge of the 322nd District
Court; she voluntarily recused herself from the case.  The case was then transferred to the 231st
District Court of Tarrant County.

Roxsane
and the foster parents each filed motions to modify the February 2, 2006
temporary orders in May 2007.  The only
subsequent order in the record is dated June 6, 2007, in which the associate
judge of the 231st District Court ordered the preparation of a social study at
the expense of the foster parents. 
However, the associate judge=s
report, dated the same day, states that the temporary orders restricting J.R.=s
residence to Tarrant County are modified to allow his residence to be in
Tarrant or contiguous counties.  The
associate judge also withheld ruling on several other issues raised by the
parties in their motions to modify the temporary orders.








Roxsane
filed a notice of removal to federal court on June 15, 2007, but the federal
court remanded the case to the 231st District Court on October 9, 2007.  Roxsane filed this petition for writ of
mandamus on November 14, 2007, contending that this court should order the
trial court to dismiss the underlying suit Ain
accordance with the jury=s original verdict rendered on
April 12, 2005, [or] in the alternative, strike the plea in intervention@ by the
foster parents.  Because the presiding
judge of the 231st District Court, the Honorable Randy Catterton, had not ruled
on any of the issues raised in the petition, we abated the case to provide
Judge Catterton with an opportunity to rule on Roxsane=s motion
to dismiss.  See State v. Olsen,
163 Tex. 449, 360 S.W.2d 402, 403 (1962) (orig. proceeding); In re Whitfield,
134 S.W.3d 314, 315 (Tex. App.CWaco
2003, order); see also Tex. R.
App. P. 7.2(b).  After a
nonevidentiary hearing, Judge Catterton denied the motion.  We reinstated the case on February 22, 2008,
upon Roxsane=s filing of a supplemental
record containing the trial court=s order
denying the motion.

                                                Laches








Before we address Roxsane=s
issues, we must address the argument of the foster parents that Roxsane=s claims
are barred by the doctrine of laches. 
According to the foster parents, there is no justification for Roxsane=s delay
in seeking mandamus relief from this court when some of her complaints relate
to the trial court=s actions (and alleged inaction)
two and one-half years before she filed her petition.

Although
mandamus is not an equitable remedy, its issuance is largely controlled by
equitable principles.  In re Users
Sys. Servs., Inc., 22 S.W.3d 331, 337 (Tex. 1999) (orig. proceeding); Rivercenter
Assocs. v. Rivera, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding); In
re Hinterlong, 109 S.W.3d 611, 620 (Tex. App.CFort
Worth 2003, orig. proceeding).  One of
these equitable principles is that equity aids the diligent and not those who
slumber on their rights.  Rivercenter
Assocs., 858 S.W.2d at 367; In re Hinterlong, 109 S.W.3d at
620.  Thus, mandamus relief may be denied
when a party inexplicably delays asserting its rights.  See, e.g., Rivercenter Assocs.,
858 S.W.2d at 367; In re Hinterlong, 109 S.W.3d at 620.

In
determining if Roxsane=s delay in seeking a writ of
mandamus bars issuance of a writ, a court may analogize to the doctrine of
laches, which bars equitable relief.  In
re Hinterlong, 109 S.W.3d at 620.  A
party asserting the defense of laches must show both an unreasonable delay by
the other party in asserting its rights and harm resulting to it because of the
delay.  Rogers v. Ricane Enters. Inc.,
772 S.W.2d 76, 80 (Tex. 1989); In re Hinterlong, 109 S.W.3d at 620.













Although
the record shows periods of delay by Roxsane in seeking relief as to the
petition in intervention, overall, the record also shows a pattern by Roxsane
of trying to seek relief from each of the trial courts involved.  In addition, the record also shows that
Roxsane was represented by different attorneys and was, at one point, pro se
when she sought relief from the trial courts. 
Specifically, Mary Beth Scott represented Roxsane at the termination
trial and after trial when the foster parents filed the petition in
intervention, presumably when Roxsane raised her first objection as to
standing.  After the McLennan County
courts entered the monitored return order and transfer order to Tarrant County,
Roxsane had no need to object because J.R. was returned to her by court order
and the foster parents had no contact with him for at least five months, from
May 31, 2005 to October 21, 2005.  It was
only when TDFPS nonsuited its claims, yet the foster parents remained in the
suit, that Roxsane had a reason to again raise the issue of the propriety of
proceedings continuing as to their petition in intervention.  And Roxsane did object at that time, seeking
relief from the 322nd District Court. 
She was pro se at the time; there is no evidence as to how long it took
for her to find and hire a new attorney.[12]  Her motion to dismiss was filed by Yusuf
Abdullah, who represented her until at least August 2006.  The mandamus record does not show when
Roxsane hired her current attorney, Judith Grantham, but the first document
filed by Grantham in the mandamus record is a motion to modify temporary orders
filed on May 31, 2007.

We
conclude and hold that the record shows that Roxsane did not unreasonably delay
in seeking relief as to the propriety of the petition in intervention.  Thus, we will review and consider the merits
of Roxsane=s complaints in this mandamus
proceeding.

               Should
Trial Court Have Dismissed Plea in Intervention?








In her petition for writ of mandamus and in her motion to dismiss
filed in the trial court, Roxsane challenges the timeliness and propriety of
the foster parents= plea in intervention.  She contends that the trial court should have
stricken the plea in intervention when it was filed.  She also contends that even if the plea in
intervention was timely and the 170th District Court in McClennan County had
discretion not to strike it, the 322nd District Court in Tarrant County, to
which the case was transferred, nevertheless should have dismissed the foster
parents from the suit and rendered a final order in her favor upon TDFPS=s
nonsuit of its claims.  Implicit in her
arguments is the contention that the scope of the plea in intervention was
limited to the issues in TDFPS=s
termination suit.  That is, when TDFPS
nonsuited its claims, there were no remaining claims for affirmative relief by
the foster parents that would have justified them remaining in the suit; the
termination suit had already been tried to a jury.  We agree with Roxsane=s latter
contention.  Furthermore, because it is
dispositive, we need not address her claims as to the initial timeliness and
propriety of the intervention.  See
Tex. R. App. P. 47.1; Horsley-Layman
v. Adventist Health Sys./Sunbelt, Inc., 221 S.W.3d 802, 809 (Tex. App.CFort
Worth 2007, pet. denied).

Applicable Law








AAny party may intervene by
filing a pleading, subject to being stricken out by the court for sufficient
cause on the motion of any party.@  Tex.
R. Civ. P. 60.  Upon filing of a
timely petition in intervention, an intervenor becomes a party to the suit for
all purposes.  In re D.D.M., 116
S.W.3d 224, 231 (Tex. App.CTyler
2003, no pet.); Brook v. Brook, 865 S.W.2d 166, 172 (Tex. App.CCorpus
Christi 1993), aff=d, 881
S.W.2d 297 (Tex. 1994).  If a party
nonsuits its claims or its claims are dismissed, a remaining party=s right
to be heard on any of its pending claims for affirmative relief is not
prejudiced, and the trial court retains jurisdiction over the remaining
claims.  Tex. R. Civ. P. 162; Univ. of Tex. Med. Branch at
Galveston v. Estate of Blackmon ex rel. Shultz, 195 S.W.3d 98, 100B01 (Tex.
2006); Yaquinto v. Britt, 188 S.W.3d 819, 824 (Tex. App.CFort
Worth 2006, pet. denied); In re D.D.M., 116 S.W.3d at 232.

A claim
for affirmative relief is a pleading that states facts showing a cause of
action independent of the plaintiff=s claim
on which the claimant could obtain relief even if the plaintiff abandons or is
unable to establish its cause of action. 
Univ. of Tex. Med. Branch, 195 S.W.3d at 101; In re D.D.M.,
116 S.W.3d at 232.  Whether a pleading is
an affirmative claim for relief is determined by the facts alleged and not by
the name given the plea or by the form of the prayer for relief.  In re D.D.M., 116 S.W.3d at 232; Baca
v. Hoover, Bax & Shearer, 823 S.W.2d 734, 737 (Tex. App.CHouston
[14th Dist.] 1992, writ denied).

Analysis

Here,
the foster parents= plea in intervention stated as
follows:

It is in the best
interests of the child that the Court continue the appointment of
[TDFPS] as Managing Conservator pursuant to Section 263.401(d) or 263.403 of
the Texas Family Code.  Failing that, it
is in the best interest of the child to appoint intervenors managing conservators
of the child, and to make such other and further orders as are necessary to
ensure that the child is in a safe environment.

 

WHEREFORE,
intervenors request that the parties take notice of the filing of this plea in
intervention, and that, on hearing the Court appoint intervenors managing conservators
of the child or, in the alternative, order that intervenors have access to the
child in accordance with the allegations of this plea, grant intervenors= their
costs of suit, including attorney=s fees,
and make such other and further orders to which intervenors may be justly
entitled.  [Emphasis added.]








Looking to the facts pled by the
foster parents, we conclude that their claims are contingent upon, and not
independent of, TDFPS=s allegations in its previously
tried termination suit.[13]  Specifically, they asked that TDFPS be
continued as the managing conservator, either in a final order under
family code section 263.401(d)[14]
or in a monitored return order under section 263.403; their request to
be appointed managing conservators of J.R. is also clearly made in the
alternative.[15]













The
trial court granted the foster parents the relief they requested in their plea
in intervention when it rendered the monitored return order providing for the transition
of J.R. into Roxsane=s home.[16]  Further, in its order transferring the case
to Tarrant County, the 74th District Court required J.R. to be returned to
Roxsane without any additional provision for further possession by the foster
parents; they did not have any possession of him from that date until at least
October 21, 2005 and possibly until the effective date of the 322nd District
Court=s
February 2, 2006 temporary orders giving them limited possession.  Thus, the record shows that the McClennan
County trial judge intended to fully resolve the alternative claims for relief
in the foster parents= plea in intervention by
entering the monitored return order, under which the judge intended for J.R. to
remain with Roxsane unless TDFPS or the foster parents became aware of
any circumstances justifying his subsequent removal, the statutory exception to
dismissal.  The record shows that TDFPS
did not remove J.R. from Roxsane=s
possession from the time he was returned to her possession on May 31, 2005 to
the date of its nonsuit.  Thus, the
record shows that upon expiration of the monitored return order, the McClennan
County trial judge intended for Roxsane to have sole possession of J.R. if he
had not been removed from her before that time for safety concerns.

Because
the foster parents= claims for relief had been
resolved when TDFPS nonsuited its claimsCand they
had no pending claims for affirmative reliefCthe
322nd District Court abused its discretion by failing to dismiss the plea in
intervention and enter a final order in Roxsane=s favor
on October 21, 2005.  We recognize that
this case has followed a unique and convoluted procedural history.  However, because the foster parents no longer
had standing under section 102.003(a)(12) when they filed their first
independent claim for affirmative relief in August 2006, the 231st District
Court abused its discretion by refusing to dismiss the plea in intervention
while this case was abated.  We sustain
Roxsane=s challenge
to the trial court=s failure to dismiss the plea in
intervention.

Adequate
Remedy by Appeal








To be entitled to mandamus relief, Roxsane must also show that she has
an inadequate remedy by appeal.  In re
Sw. Bell Tel. Co., 235 S.W.3d 619, 623 (Tex. 2007); In re Spiritas Ranch
Enters., L.L.P., 218 S.W.3d 887, 893 (Tex. App.CFort
Worth 2007, orig. proceeding).  There is
no final order in this case; the trial court=s order
denying the motion to dismiss is interlocutory. 
See Wright v. Pino, 163 S.W.3d 259, 263 (Tex. App.CFort
Worth 2005, no pet.) (holding that a judgment is final when it actually
disposes of every claim and party or clearly and unequivocally states that it
disposes of all claims and parties). 
Texas appellate courts have jurisdiction only over final orders or
judgments unless a statute permits an interlocutory appeal.  Ogletree v. Matthews, No. 06-0502,
2007 WL 4216606, at *2 n.1 (Tex. Nov. 30, 2007); Jain v. Stafford, 214
S.W.3d 94, 96 (Tex. App.CFort Worth 2006, pet. dism=d).  Here, an appeal of the trial court=s order
is not authorized by statute.  See
Tex. Civ. Prac. & Rem. Code Ann.
'
51.014(a) (Vernon Supp. 2007) (listing appealable interlocutory orders); Tex. Fam. Code Ann. '
105.001(e) (Vernon Supp. 2007) (providing that temporary orders are not subject
to interlocutory appeal).

Because
the trial court=s order is not immediately
appealable, we must determine whether an appeal from any final order on the
petition in intervention would be adequate. 
We hold that it would not.








The
supreme court has held that determining whether an adequate remedy by appeal
exists Ademands
a >careful
balance of jurisprudential considerations that determine when appellate courts
will use original mandamus proceedings to review the actions of lower courts.=@  In re Tex. Dep=t of
Family and Protective Servs., 210 S.W.3d 609, 613 (Tex. 2006) (quoting In
re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004)).  It has also held that justice demands a
speedy resolution in cases involving child custody and that appeal is
frequently inadequate to protect the rights of parents and children.  Id.

Here,
Roxsane has been forced to defend against and participate in the costs of a
suit alleging previously litigated issues involving custody and conservatorship
of her child that should have been dismissed no later than October 21,
2005.  The foster parents would not have
had standing to file an original suit in October 2005 since they had not had
any contact with J.R. for five months. 
Currently, Roxsane is having to participate in a social study, and the
foster parents are maintaining contact with J.R. that they would not otherwise
have had.  There is no evidence that J.R.=s
circumstances have changed in a way that would warrant removal or the
institution of a new suit.  No trial date
is set, so it is unclear how much longer Roxsane will have to participate in
and defend against this suit.  We
conclude and hold that any remedy available by appeal would be inadequate to
protect Roxsane=s interest in J.R.








Because
we have determined that Roxsane is entitled to relief, i.e., the dismissal of
the foster parents= plea in intervention, we
conditionally grant the writ of mandamus and order the trial court to enter an
order dismissing the foster parents= plea in
intervention.[17]  A writ will issue only if the trial court
fails to comply with this order.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL
B:   LIVINGSTON, WALKER, and MCCOY, JJ.

 

DELIVERED:
March 28, 2008











[1]Our disposition of this case in favor of relator
renders our previous granting of an extension to file a supplemental record on
behalf of relator moot.





[2]At the time of initial filing, the agency was known as
the Texas Department of Protective and Regulatory Services, but its name was
changed during the pendency of the suit.





[3]At the time of the termination suit, family code
section 263.401 provided as follows, in pertinent part:

 

(a)     Unless
the court has rendered a final order or granted an extension under Subsection
(b), on the first Monday after the first anniversary of the date the court
rendered a temporary order appointing the department as temporary managing
conservator, the court shall dismiss the suit affecting the parent-child
relationship filed by the department that requests termination of the
parent-child relationship or requests that the department be named conservator
of the child.

 

(b)    The court
may retain the suit on the court=s docket for a period not to exceed 180 days after the
time described by Subsection (a), if the court finds that continuing the
appointment of the department as temporary managing conservator is in the best
interest of the child.  If the court
retains the suit on the court=s docket, the court shall render an order in which the
court:

 

(1)    schedules
the new date for dismissal of the suit not later than the 180th day after the
time described by Subsection (a);

(2)    makes
further temporary orders for the safety and welfare of the child as necessary
to avoid further delay in resolving the suit; and

(3)    sets a
final hearing on a date that allows the court to render a final order before
the required date for dismissal of the suit under this subsection.

 

(c)     If the
court grants an extension but does not render a final order or dismiss the suit
on or before the required date for dismissal under Subsection (b), the court
shall dismiss the suit.  The court may
not grant an additional extension that extends the suit beyond the required
date for dismissal under Subsection (b).

 

Act of May 22, 2001, 77th
Leg., R.S., ch. 1090, ' 8, 2001 Tex. Gen. Laws 2395, 2396 (amended 2005 &
2007), and Act of May 28, 1997, 75th Leg., R.S., ch. 600, ' 17,
1997 Tex. Gen. Laws 2108, 2113 (current version at Tex. Fam. Code Ann. ' 263.401 (Vernon Supp. 2007)).

 

Section 263.401was amended in this past legislative
session to provide that the requirement to enter a final order or dismiss the
suit does not apply once trial on the merits has commenced; however, that
amendment does not apply to this case because it was commenced before the effective
date of the amendment.  See Act of
May 27, 2007, 80th Leg., R.S., ch. 866, ' 6, 2007 Tex. Gen. Laws 1837, 1838.





[4]However, the jury charge specifically stated that A[i]f no
termination of the parent-child relationship is ordered, the court may modify
[Roxsane=s] rights and duties by court order.@





[5]Former section 263.401(d), which was applicable in
April 2005, described a final order as one that

 

(1)    requires that a child be returned to the
child=s parent;

(2)    names a relative of the child or another
person as the child=s managing conservator;

(3)    without terminating the parent-child
relationship, appoints the department as the managing conservator of the child;
or

(4)    terminates the parent-child relationship and
appoints a relative of the child, another suitable person, or the department as
managing conservator of the child.

 

Act
of May 28, 1997, 75th Leg., R.S., ch. 600, ' 17, 1997 Tex. Gen. Laws 2108, 2113 (repealed 2007).





[6]The version of section 263.403 that was applicable in
April 2005 read as follows:

 

(a) Notwithstanding Section 263.401, the court may
retain jurisdiction and not dismiss the suit or render a final order as
required by that section if the court renders a temporary order that:

 

(1) finds that retaining jurisdiction under this
section is in the best interest of the child;

(2) orders the department to return the child to the
child's parent;

(3) orders the department to continue to serve as temporary
managing conservator of the child;  and

(4) orders the department to monitor the child's
placement to ensure that the child is in a safe environment.

 

(b) If the court renders an order under this section,
the court shall:

 

(1) include in the order specific findings regarding
the grounds for the order;  and

(2) schedule a new date, not later than the 180th day
after the date the temporary order is rendered, for dismissal of the suit.

 

(c) If a child placed with a parent under this section
must be moved from that home by the department before the dismissal of the suit
or the rendering of a final order, the court shall, at the time of the move,
schedule a new date for dismissal of the suit. 
The new dismissal date may not be later than the original dismissal date
established under Section 263.401 or the 180th day after the date the child is
moved under this subsection, whichever date is later.

 

(d) If the court renders an order under this section,
the court must include in the order specific findings regarding the grounds for
the order.

 

Act
of May 22, 2001, 77th Leg., R.S., ch. 1090, ' 9, 2001 Tex. Gen. Laws 2395, 2397 (amended 2007)
(current version at Tex. Fam. Code Ann.
' 263.403 (Vernon Supp. 2007)).





[7]See note 6 supra.





[8]There is no additional temporary order or agreed
temporary order in the record designating any specified period of possession to
[the] foster parents during the monitored return, however.





[9]Although the case had been pending in the 170th
District Court of McLennan County, the caption of the transfer order shows that
it was an order from the 74th District Court of McLennan County.





[10]These orders are not in the record.





[11]Section 151.001 of the family code sets forth the
rights and duties of a parent in the absence of an order establishing
conservatorship.  Tex. Fam. Code Ann. ' 151.001 (Vernon Supp. 2007).





[12]Roxsane was still pro se when the 322nd District Court
entered its February 2, 2006 order affirming the associate judge=s
temporary orders.





[13]Although the plea in intervention states that the
foster parents have standing under section 102.003(a)(12) of the family codeCwhich
provides that a foster parent with whom TDFPS has placed a child and who has
had possession of that child for at least twelve months ending not more than
ninety days preceding the date of the filing of a petition has standing to file
an original SAPCRCthe facts alleged in the plea show that it was meant
to be a plea in intervention rather than an original suit seeking
conservatorship of J.R.  See Tex. Fam. Code Ann. '
102.003(a)(12) (Vernon Supp. 2007); In re N.L.G., 238 S.W.3d 828, 830-31
(Tex. App.CFort Worth 2007, no pet.); In re A.M., 60
S.W.3d 166, 169 (Tex. App.CHouston [1st Dist.] 2001, no pet.) (A[I]ntervening
and filing the original suit are distinct legal actions.@).





[14]Former section 263.401(d) provided that a final order
includes one that, Awithout terminating the parent-child relationship,
appoints [TDFPS] as the managing conservator of the child.@





[15]Our conclusion is supported by the posture of the case
at the time.  The foster parents did not
intervene until after the jury had already determined the merits of
TDFPS=s termination suit. 
Thus, they were no longer able to seek an affirmative claim for adoption
and, as nonparents, would have had to overcome the statutory presumption in
favor of parents to seek any affirmative relief as to J.R.  See Tex.
Fam. Code Ann. ' 153.131 (Vernon 2002).





[16]The trial court=s comments at the April 26, 2005 hearing clarify the
court=s intent.  After
noting that the jury had determined that Roxsane=s rights should not be terminated, the court stated
that it had not heard anything new or different.  While explaining the terms of the monitored
return order, the court addressed the foster parents, acknowledging the toll it
would probably take on them to return J.R. 
But the court further stated, AAnd then we=ll just see how this works.  If you [Roxsane] can handle this and if
[J.R.] can handle it, then obviously he will be in his family.@  It is clear from the trial court=s
comments that its intention was to resolve all pending claims by the foster
parents.





[17]Our holding should not be construed as preventing the
trial court from entering any temporary orders that may be otherwise
permissible by law or that may be agreed to by the parties providing for
gradually decreased possession by the foster parents as the trial court may
find to be in J.R.=s best interest. 
See, e.g., Tex. Fam. Code
Ann. '' 109.001, 153.001B.002 (Vernon 2002).